IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In re: | Case No. 15-12373 |
| STANLEY JAY LAWRENCE, <br>                           Debtor. | Chapter 7 |
| LINDA S. PARKS, Trustee , <br>                   *Plaintiff,* <br> vs. | Adv. No. 17-05082 |
| DIAN L. LAWRENCE, STANLEY JAY LAWRENCE, and MOBILE MANOR, INC., <br>                   *Defendants.* | ***Electronically Filed*** |

### AMENDED ANSWER OF DEFENDANT MOBILE MANOR, INC.

The defendant, Mobile Manor, Inc. ("MMI"), by and through its counsel of record, submits the following Amended Answer to the Amended Complaint filed herein. MMI sets out each paragraph of the Amended Complaint and its Answer immediately thereafter.

1.     This Court has jurisdiction over the subject matter and the parties hereto pursuant to 28 U.S.C. § 157(b)(2)(H), 11 U.S.C. §§ 542, 544, 547, 548, Fed. R. Bankr. P. 7001, and LBR D.Kan. 1001-1 *et seq.*  This is a core proceeding.

ANSWER:   Admitted.

2.      The Debtor filed a petition for relief under Chapter 7 of title 11, 11 U.S.C. § 101, *et seq.*, on November 2, 2015, and the 11 U.S.C. § 341 Creditors' Meeting was held and concluded on December 1, 2015, at 10:00 a.m.

ANSWER:   Admitted.

3.      Linda S. Parks is the duly appointed and acting Trustee of Debtor's bankruptcy estate.

ANSWER:   Admitted.

4.      Defendant, Dian L. Lawrence, ("Wife"), is an individual and can be served with process at 15616 E. Lynnwood St., Wichita, KS 67230.  She is also the spouse of the Debtor, Stanley Jay Lawrence, and is an "insider" as that term is defined in 11 U.S.C. § 101(31).

ANSWER:   Admitted.

5.      Defendant/Debtor, Stanley Jay Lawrence, ("Debtor"), is an individual and can be served with process at 15616 E. Lynnwood St., Wichita, KS 67230 and by serving his attorney, William H. Zimmerman, Jr., 229 E. William, Suite 100, Wichita, KS 67202.

ANSWER:   Admitted.

6.    Defendant, Mobile Manor, Inc., ("Mobile Manor"), is a corporation which can be served with process by serving its resident agent, B.A. Ruedebusch, 3200 Southeast Blvd., Wichita, KS 67204.

ANSWER:   MMI admits it is a corporation, but denies the balance of the allegations made in this paragraph. MMI does not contest service of process of the Complaint or the Amended Complaint herein.

7.    Mobile Manor is an entity owned by Richard and/or Joanne Peckman, who were long-term friends of Debtor and Wife.

ANSWER:   MMI admits it is owned by JoAnn Peckham. As to the balance of the allegations made in this paragraph, it is admitted that Richard and JoAnn Peckham have been, at all times relevant to the claims asserted herein, long-time friends of Debtor and Wife. The balance of the allegations made in this paragraph are denied.

8.    Wife was an employee of Mobile Manor until 2015, when she was terminated. The same year she was terminated, she and Mobile Manor entered into a release agreement in which she agreed to reimburse her former employers for

credit cards charges used to build and furnish the house she and Debtor owned and

built and in which they both lived.

ANSWER: The allegations made in the first sentence of this paragraph are

admitted. It is further admitted that Wife was terminated in 2015 for her misuse of

Mobile Manor's credit cards, that she and Mobile Manor entered into a release later

in 2015 pertaining to that claim, and that at some point she and Debtor both lived

in a house which was built and furnished, in part with the proceeds of Wife's

unauthorized use of Mobile Manor's credit cards. The balance of the allegations

made in this paragraph are denied.

9.      Prior to 2010, Debtor and Wife jointly owned a home in the Rocky

Creek area of Wichita, Kansas (the "Rocky Creek Home"). In approximately 2010,

Debtor and Wife sold the Rocky Creek Home and purchased a vacant lot on which

to build a home (the "Property"). Debtor and Wife used the proceeds of the jointly-

owned Rocky Creek Home to purchase the Property.

ANSWER: MMI does not have sufficient information to admit or deny the

allegations made in this paragraph. Therefore, they are denied.

10.     Debtor deeded bare legal title of his interest in the Property to Wife shortly after the two of them purchased the Property.  There was no consideration given.  Despite his deed of his interest in the Property, for the next 7-8 years Debtor continued to work on and live in and exercise control over and grant a mortgage on the Property.

ANSWER:   MMI does not have sufficient information to admit or deny the allegations made in this paragraph. Therefore, they are denied.

11.     After purchasing the Property and deeding the bare legal title to Wife, Debtor and Wife used the remaining proceeds from the sale of their jointly-owned Rocky Creek Home to build their home on the Property.

ANSWER:   MMI does not have sufficient information to admit or deny the allegations made in this paragraph. Therefore, they are denied.

12.     Debtor, who is a builder/contractor by trade, personally hired and supervised subcontractors and personally performed much of the construction on the house.  All those who worked on the home knew it as Debtor's home and none were told he did not own the home.

ANSWER:   MMI does not have sufficient information to admit or deny the allegations made in this paragraph. Therefore, they are denied.

13.    Debtor and Wife completed construction of the house on the Property sometime during the summer of 2011 and have lived there together continuously.

ANSWER:   MMI does not have sufficient information to admit or deny the allegations made in this paragraph. Therefore, they are denied.

14.    When the proceeds from the sale of the Rocky Creek Home were exhausted, Debtor and Wife utilized Home Depot and Lowe's credit cards that were held in the name of Mobile Manor to fund the rest of the construction and to furnish the house on the Property.

ANSWER:  MMI admits that Wife utilized some of MMI's credit cards without MMI's authority for her personal use. As to the balance of the allegations made in this paragraph, MMI does not have sufficient information to admit or deny them. Therefore, they are denied.

15.    Even after the home was completed and furnished, Debtor and Wife continued using the credit of Mobile Manor for their joint personal benefit.  Debtor knew or should have known of the use of Mobile Manor funds.

ANSWER:   It is admitted that after the home was completed and furnished, Wife continued the unauthorized use of Mobile Manor's credit cards and that such use benefitted both Debtor and Wife personally. MMI does not have sufficient information to admit or deny the balance of the allegations made in this paragraph. Therefore, they are denied.

16.     Debtor and Wife charged more than $185,000 to Mobile Manor to fund the construction, furnishing and improvement of the house and for other personal expenses.

ANSWER:   MMI admits Wife charged approximately $185,000.00 to MMI's credit cards without MMI's knowledge or consent and that those funds were used to fund a portion of the construction and furnishing of the house. MMI does not have sufficient information to admit or deny the balance of the allegations made in this paragraph and, therefore, they are denied.

17.     In 2015, Mobile Manor fired Wife. Mobile Manor and Wife then entered into a release agreement in which Wife agreed to pay Mobile Manor $184,135.44 in exchange for a release of its claim against her for the unauthorized charges.

ANSWER:   Admitted, except the amount paid by Wife to Mobile Manor for the release was $182,520.22 and the release was made August 17, 2015.

18.     To fund wife's release agreement, on August 11, 2015, Wife and Debtor jointly acquired a mortgage loan from Vintage Bank in the sum of $190,000.00 (the "Note").  The Note was secured by the Property and the house located thereon, legally described as Lot 33, Block 3, Belle Terre South, an Addition to Wichita, Sedgwick County, Kansas, and more commonly known as 15616 E. Lynnwood St., Wichita, KS 67230 (the "Mortgage").  Debtor signed both the Note and Mortgage.

ANSWER:   MMI does not have sufficient information to admit or deny the allegations made in this paragraph. Therefore, they are denied.

19.     On August 17, 2015, Wife deposited a total of $184,135.44 in to her Vintage Bank Kansas checking account ending in 0317, which were the proceeds of the Note.

ANSWER:   MMI does not have sufficient information to admit or deny the allegations made in this paragraph. Therefore, they are denied.

20.    On August 17, 2015, Debtor and Wife paid $182,520.22 to Mobile Manor to repay Mobile Manor for charges Debtor and Wife had made to Mobile Manor for their joint benefit.

ANSWER:    MMI admits it received a $182,520.22 payment from Wife on August 17, 2015 to satisfy the debt she owed MMI for her unauthorized use of MMI's credit cards. MMI does not have sufficient information to admit or deny the balance of the allegations made in this paragraph and, therefore, they are denied. It is specifically denied that Debtor owed a debt to MMI.

21.    Debtor does not disclose ownership of any interest in any Real Estate in his Bankruptcy schedules.  He does not disclose the Property and does not claim the Property as exempt under Schedule C.  Debtor does identify the Property as "homestead" on Schedule D where he identifies Vintage Bank Kansas as a secured creditor.

ANSWER:    Admitted.

## COUNT I: FRAUDULENT CONVEYANCE FOR
## THE BENEFIT OF THE WIFE, WHO IS AN INSIDER

22.    Plaintiff incorporates paragraphs 1-21 as if fully set forth herein.

ANSWER:   MMI admits or denies the allegations made in paragraphs 1-21 as previously admitted or denied herein.

23.    On August 17, 2015, Wife entered into a settlement agreement with Mobile Manor in which she agreed to pay Mobil Manor $182,520.22 in exchange for a release of its claims against her for "that indebtedness generated by Dian Lawrence during her tenure as an employee of Mobile Manor, Inc."

ANSWER:   Admitted.

24.    In order to fund Wife's payment and to quickly satisfy her liability to her former employer, Debtor and his wife jointly borrowed $190,000 in August of 2015.  At that time, Debtor was insolvent.

ANSWER:   MMI does not have sufficient information to admit or deny the allegations made in this paragraph. Therefore, they are denied.

25.    Debtor's transfer of the $182,520.22 proceeds to Wife, who then transferred the money to Mobile Manor, was a fraudulent transfer to benefit his Wife, an insider.

ANSWER:   Denied.

26.     The transfer described above is a fraudulent conveyance pursuant to 11 U.S.C. § 548, as such transfer was made with an actual intent to hinder, delay or defraud Debtor's creditors and/or without the exchange of reasonably equivalent value, at a time when the Debtor was insolvent, and the transfer was made to or for the benefit of Wife, as an insider.  Said transfer is subject to recovery pursuant to 11 U.S.C. § 550.

ANSWER:   Denied.

27.     The transfer described above is a fraudulent conveyance pursuant to K.S.A. 33-204 and 33-205, as such transfer was made with an actual intent to hinder, delay or defraud Debtor's creditors and/or without the exchange of reasonably equivalent value.

ANSWER:   Denied.

28.     With respect to the above transfer, the following badges of fraud, among others, are applicable and are to be considered in determining actual intent:

a.     The transfer was to or for the benefit of an insider;

b.     The transfer was concealed from the Debtor's creditors;

c.     The Debtor was insolvent at the time of the transfer; and

  d. The transfer was part of a scheme to transfer assets to avoid bankruptcy creditors.

ANSWER: Denied.

## AFFIRMATIVE DEFENSES

MMI asserts that all or a portion of the Trustee's claims in Count I are barred by the governing statute of limitations.

WHEREFORE, MMI prays that the Court enter judgment for the defendants, for the costs of this action, and for such other relief as the Court deems just.

## COUNT II: PREFERENCE FOR PAYMENT OF A JOINT DEBT TO MOBILE MANOR

29. Plaintiff incorporates paragraphs 1-28 as if fully set forth herein.

ANSWER: MMI admits or denies the allegations made in paragraphs 1-28 as previously admitted or denied herein.

30. Prior to obtaining the Mortgage loan from Vintage Bank Kansas, Debtor and Wife completed a Residential Loan Application with Vintage Bank Kansas. In that Application, Debtor and Wife described a joint unsecured personal loan obligation in the amount of $185,000.

ANSWER:   MMI does not have sufficient information to admit or deny the allegations made in this paragraph. Therefore, they are denied.

31.     Debtor testified at an examination conducted pursuant to Fed. R. Bankr. P. 2004 on January 14, 2016, that the Mortgage loan from Vintage Bank Kansas was used to pay back an unsecured personal loan from "a friend."  He later identified the friend as Mobile Manor.  Debtor testified that the debt to Mobile Manor was incurred over a period of time from 2011 to 2015, and was used for the construction of a house on the Property, and for other obligations following the completion of construction of the house on the Property.

ANSWER:   MMI does not have sufficient information to admit or deny the allegations made in this paragraph. Therefore, they are denied. MMI specifically denies the Debtor owed a debt to MMI at the time of the transfer in question.

32.     The payment of $182,520.22 to Mobile Manor to retire the joint personal debt of Wife and Debtor occurred within 90 days of Debtor's bankruptcy filing.  The payment enabled Mobile Manor to receive more than it would had the transfer not been made. The transfer constitutes a preference to Mobile Manor.

ANSWER:   Denied.

33. Debtor was insolvent at the time of the transfer and there was no contemporaneous exchange of value.

ANSWER: Denied.

34. Pursuant to 11 U.S.C. §547(b), the above described preferred transfers should be paid over to the Trustee.

ANSWER: Denied.

## AFFIRMATIVE DEFENSES

MMI asserts the following affirmative defenses to the claims asserted by the Trustee in this Count II:

A. The transfer in question was not to or for the benefit of a creditor of the debtor in that MMI had no claim against the debtor;

B. The transfer in question was not for or on account of an antecedent debt owed by the debtor in that MMI had no claim against the debtor;

C. There was no transfer of an interest of the debtor in property to MMI;

D. The transfer in question was not made while the debtor was insolvent;

E. MMI was at all times relevant entitled to assert an equitable lien or impose a constructive trust against the Property owned by Wife in an

amount equal to or greater than the transfer in question. As such, the transfer in question did not enable MMI to receive more than it would receive if the case were a case under Chapter 7 of Title 11, the transfer had not been made, and MMI received payment of any debt owed MMI by the Debtor and/or Wife to the extent provided by the provisions of Title 11, United States Code.

F.     The transfer in question was intended by the Debtor, Wife and MMI to be a contemporaneous exchange for new value given to the debtor, that being the release of MMI's right to assert an equitable lien or constructive trust against the Property, and, in fact, was a substantially contemporaneous exchange.

WHEREFORE, MMI prays that the Court enter judgment for MMI, for the costs of this action, and for such other and further relief as the Court deems just.

## COUNT III: PREFERENCE TO WIFE IN PAYING OFF DEBT OF AN INSIDER

35.     Plaintiff incorporates paragraphs 1-34 as if fully set forth herein.

ANSWER:   MMI admits or denies the allegations made in paragraphs 1-34 as previously admitted or denied herein.

36.     Prior to obtaining the Mortgage loan from Vintage Bank Kansas, Debtor and Wife completed a Residential Loan Application with Vintage Bank Kansas.  In that Application, Debtor and Wife described a joint unsecured personal loan obligation in the amount of $185,000.  Upon information and belief, the amount owed to Mobile Manor was either owed entirely by Wife to Mobile Manor, or owed jointly and severally by Wife and Debtor to Mobile Manor.

ANSWER:   MMI does not have sufficient information to admit or deny the allegations made in the first two sentences this paragraph. Therefore, they are denied. MMI admits any amount owed to it was owed only by Wife and not the Debtor.

37.     Debtor testified at an examination conducted pursuant to Fed. R. Bankr. P. 2004 on January 14, 2016. Debtor testified that the Mortgage loan from Vintage Bank Kansas was used to pay back a personal loan from a friend (later described as Mobile Manor), which debt was incurred over a period of time from 2011 to 2015, and which was incurred for the construction of a house on the Property, and for other obligations following the completion of construction of the house on the Property.

ANSWER:   MMI does not have sufficient information to admit or deny the allegations made in this paragraph. Therefore, they are denied.

38.      Neither Mobile Manor, nor any other creditor, held a lien on Debtor and Wife's home, prior to the above described Mortgage loan transaction with Vintage Bank Kansas.

ANSWER:   Denied. MMI had the right to assert an equitable lien or constructive trust against the Property at the time Vintage Bank entered into the loan transaction described in the Trustee's Complaint.

39.      The payment of $182,520.22 to Mobile Manor occurred within 90 days of Debtor's bankruptcy filing.  The payment relieved Wife's obligation to repay Mobile Manor, thereby conveying a benefit to Wife (an insider) in an amount greater than would have been received had the transfer not been made.  Such transfer constitutes a preference to Wife.

ANSWER:   The allegations made in the first sentence of this paragraph are admitted. The balance of the allegations made in this paragraph are denied.

40.      Debtor was insolvent at the time of the transfer.

ANSWER:   Denied.

41.     Pursuant to 11 U.S.C. §547(b), the above described preferred transfers should be paid over to the Trustee.

ANSWER:   Denied.

WHEREFORE, MMI prays that the Court enter judgment for the defendants, for the costs of this action, and for such other relief as the Court deems just.

## COUNT IV: CLAIM IN EQUITY AGAINST WIFE

42.     Plaintiff incorporates paragraphs 1-41 as if fully set forth herein.

ANSWER:   MMI admits or denies the allegations made in paragraphs 1-41 as previously admitted or denied herein.

43.     Debtor's 2010 conveyance to Wife of Debtor's title to the Property was a conveyance of bare legal title only, and Debtor retained an equal equitable interest in the Property as Wife.

ANSWER:   Denied.

44.     Debtor's equitable interest in the Property is equal to that of Wife's, as a result of Debtor's investment of proceeds from the sale of the Rocky Creek Home to build and furnish the Property, Debtor's efforts at constructing the house on the Property, Debtor's continued use and occupation and exercise of control over the

Property, and Debtor's use of Mortgage loan proceeds secured by the Property to repay obligations owed by Wife related to construction of the Property.

ANSWER:   MMI denies the Debtor has any interest in the property other than those protecting a spouse's nonconsensual alienation of a homestead property under Article 15, Section 9 of the Kansas Constitution. MMI admits only Wife had obligations to repay related to construction of the Property.

45.   Debtor and Wife's involvement in a fraudulent scheme, whereby Debtor conveyed legal title of the Property to Wife, Debtor and Wife conspired to and did steal money from Wife's employer by use of unauthorized charges on Mobile Manor's credit cards to construct the house on the Property, and the use of Mortgage loan proceeds by Debtor and Wife to pay back Mobile Manor for the fraudulent charges, are sufficient acts to permit the Court to compel the Property sold (by separate motion), pursuant to 11 U.S.C. §363(f)(1), with sale proceeds first applied and paying in full the lien of Vintage Bank Kansas, and the remaining funds share equally between Debtor's Bankruptcy estate and Wife, with the Bankruptcy estate having a lien on the Wife's share of such sale proceeds sufficient to cover any judgment rendered against Wife under Count I and III hereof.

ANSWER:   Denied.

WHEREFORE, MMI prays that the Court enter judgment for the defendants,

for the costs of this action and for such other relief as the Court deems just.

HINKLE LAW FIRM LLC

 /s/ W. Thomas Gilman
W. Thomas Gilman, #11867
1617 N. Waterfront Parkway, Suite 400
Wichita, KS 67206-6639
316-267-2000 / 316-660-6522 fax
tgilman@hinklaw.com
*Attorneys for Defendant,*
*Mobile Manor, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above
and foregoing was uploaded to the CM/ECF system on July 25, 2017, which will
send a notice of electronic filing to the those requesting notice pursuant to
Bankruptcy Rule 2002 and other interested parties.

 /s/ Tammy Hohstadt
Tammy Hohstadt, PLS
Legal Assistant to W. Thomas Gilman